Johnathan HARRIS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2009–SC–000621–MR.

Supreme Court of Kentucky.

March 24, 2011.

Rehearing Denied June 16, 2011.

Daniel T. Goyette, Louisville Metro Public Defender, James David Niehaus, Deputy Appellate Defender, Office of the Louisville Metro Public Defender, Louisville, KY, Counsel for Appellant.

Jack Conway, Attorney General, Jeffrey Allan Cross, Assistant Attorney General, Criminal Appellate Division, Attorney General's Office, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Johnathan Harris, appeals as a matter of right [1] from a judgment of the Jefferson Circuit Court convicting him on numerous charges, including a second-degree persistent felony offender (PFO) enhancement. In accordance with the jury's recommendation, Harris was sentenced to a total of thirty years' imprisonment for the crimes.

Harris now raises two issues: (1) that the judgment against him is void because, under the circumstances present here, the appointment of a retired judge from the senior status program to preside over his trial violated Kentucky Constitutional provisions for elected or gubernatorially-appointed judges; and (2) that his conviction as a second-degree PFO was based upon an incorrect interpretation of KRS 532.080(2) or, alternatively, that KRS 532.080(2) is unconstitutional. Finding no merit in these arguments, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 11, 2007, the Jefferson County Grand Jury indicted Harris on charges of kidnapping, first-degree rape, first-degree sodomy, second-degree assault, first-degree sexual abuse, first-degree wanton endangerment, and tampering with physical evidence. The crimes were alleged to have occurred late on the evening of October 7, 2007 and/or early on the morning of October 8, 2007, when Harris was twenty-years old. Some fifteen months later, in January 2009, he was indicted for second-degree PFO in conjunction with the same crimes charged in the earlier indictment. A recitation of the factual details about Harris's crimes is un-

---

1. Ky. Const. § 110.

necessary because they have no relevance to the issues considered in this appeal.

Following a jury trial, Harris was convicted of kidnapping, first-degree rape, first-degree sodomy, first-degree sexual abuse, first-degree wanton endangerment, and of being a second-degree PFO. He was acquitted of the second-degree assault and tampering charges. Harris's post-trial motion for judgment notwithstanding the verdict or a new trial was denied. This appeal followed.

## I. A DEFENDANT HAS NO CONSTITUTIONAL RIGHT TO HAVE AN ELECTED OR GUBERNATORIALLY-APPOINTED JUDGE PRESIDING OVER HIS CASE

■ Harris first contends that the judgment rendered against him is void because a retired Senior Judge, Geoffrey P. Morris, presided over the trial. Morris's service on the case as a special judge was by assignment of the Chief Justice, a process which Harris argues violated his right under the Kentucky Constitution to be tried by a duly-elected or a gubernatorially-appointed circuit court judge.

The factual basis for Harris's claim may be fairly summarized as follows. After indictment, the case was assigned to Judge Morris, then serving as the duly-elected judge of Division Eleven of the Jefferson Circuit Court. In early 2009, Judge Morris retired from his seat on the Jefferson Circuit Court bench and entered into the Senior Judge program. Because of impending changes in the Senior Judge program, some twenty-two other judges across Kentucky also retired. With additional vacancies created by other causes, by mid-March of 2009, a total of twenty-seven judgeships were vacant, an exceptionally high number. Pursuant to the Kentucky Constitution,[2] a vacant judgeship is filled by a nomination process which begins with the Chief Justice convening a judicial nominating commission to consider eligible candidates to recommend for the Governor's consideration, and culminates in the Governor's appointment of a replacement judge from a three-candidate list submitted by the commission.

Confronted with twenty-seven vacant judgeships and a large influx of recently-retired judges into the Senior Judge program, and with budget considerations in mind, the Chief Justice and the Governor decided to briefly delay the nomination and appointment process, and temporarily assign the newly-retired Senior Judges to their former seats for a few additional months. Therefore, pursuant to KRS 26A.020,[3] the recently-retired Judge Morris was assigned by the Chief Justice to serve as a special judge presiding over the same Jefferson Circuit Court Division Eleven docket from which he had retired. It was in that status that Judge Morris presided over Harris's trial in July 2009.

Harris argues that the delay of the nomination process and the Chief Justice's as-

---

**2.** Ky. Const. § 118.

**3.** KRS 26A.020(1): When, from any cause, a judge of any Circuit or District Court fails to attend, or being in attendance cannot properly preside in an action pending in the court, or if a vacancy occurs or exists in the office of circuit or district judge, the circuit clerk shall at once certify the facts to the Chief Justice who shall immediately designate a regular or retired justice or judge of the Court of Justice as special judge. If either party files with the circuit clerk his affidavit that the judge will not afford him a fair and impartial trial, or will not impartially decide an application for a change of venue, the circuit clerk shall at once certify the facts to the Chief Justice who shall immediately review the facts and determine whether to designate a regular or retired justice or judge of the Court of Justice as special judge. Any special judge so selected shall have all the powers and responsibilities of a regular judge of the court.

signment of Senior Judge Morris to the bench he had just vacated violated Sections 117 and 118 of the Kentucky Constitution, which Harris contends mandate an elected judiciary subject only to temporary appointments by the Governor until the next general election. Harris further complains that, as a retired judge assigned by the Chief Justice to preside over his case, Morris "was not the kind of judge envisioned by Section 7" of the Kentucky Constitution.[4]

Section 117 of the Kentucky Constitution provides that "Justices of the Supreme Court and judges of the Court of Appeals, Circuit and District Court shall be elected from their respective districts or circuits on a nonpartisan basis as provided by law." Under this provision, as Harris suggests, our judiciary is to be chosen by election by the citizens of the relevant district or circuit. This fundamental principle is not at issue. However, because of death, retirement, illness, or other occurrence in the midst of an elected term of office, vacancies on the bench occasionally arise. Section 118(1) of the Kentucky Constitution represents the contemplation of this inevitability and provides that:

A vacancy in the office of a justice of the Supreme Court, or of a judge of the Court of Appeals, circuit or district court which under Section 152 of this Constitution is to be filled by appointment by the Governor shall be filled by the Governor from a list of three names presented to him by the appropriate judicial nominating commission. If the

Governor fails to make an appointment from the list within sixty days from the date it is presented to him, the appointment shall be made from the same list by the chief justice of the Supreme Court.

Moreover, our drafters of the Judicial Article of our Constitution also recognized that justice could not always await the process established in Section 118(1), and that a prompt interim arrangement was required to assure the availability of a judge when needed. To that end, Section 110(5)(b) of the Kentucky Constitution, provides as follows:

The Chief Justice of the Commonwealth shall be the executive head of the Court of Justice and he shall appoint such administrative assistants as he deems necessary. *He shall assign temporarily any justice or judge of the Commonwealth, active or retired, to sit in any court other than the Supreme Court when he deems such assignment necessary for the prompt disposition of causes.* The Chief Justice shall submit the budget for the Court of Justice and perform all other necessary administrative functions relating to the court.

(Emphasis added). Thus, Harris's contention that our Constitution affords him a right to have an elected or gubernatorially-appointed judge preside at his trial is plainly refuted by Section 110(5)(b).[5]

At the time of his assignment as a special judge, Morris was a retired judge qualified for service in the vacant judgeship, and the Constitution specifically gives

4. Ky. Const. § 7, "The ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modifications as may be authorized by this Constitution."

5. We note also that, even if Section 7 could be construed to require jury trials before an

elected or gubernatorially-appointed judge, the provision itself subordinates the right to "such modifications [of the right]as may be authorized by this Constitution," a clear authorization of the Chief Justice's powers under Section 110(5)(b).

the Chief Justice the authority to have made the assignment as he deems necessary. As such, Senior Judge Morris was constitutionally empowered to preside over the case at the time of Harris's trial.

We note further that Sections 117 and 118 of the Kentucky Constitution, and the rules of this Court which establish the process of filling judicial vacancies, impose no time limitations for the commencement or completion of the process to fill a judicial vacancy. *See* SCR 6.000 *et seq.* The time taken to fill the Jefferson Circuit Court, Division Eleven vacancy was not unreasonable.[6] Harris has no constitutional right to a judge selected under Sections 117 or 118 of the Constitution, as opposed to a judge assigned by the Chief Justice under Section 110, and therefore the time taken to permanently fill the vacancy left by Judge Morris's retirement affords him no grounds for relief.

Having found no deficiency in Judge Morris's constitutional authority to preside over the trial proceedings, we need not address the Commonwealth's invocation of the *de facto officer* doctrine.[7] We note also Harris failed to timely raise the issue by objecting at or before the trial to Judge Morris's continuing role in the case. *Jacobs v. Commonwealth*, 947 S.W.2d 416, 418 (Ky.App.1997) ("Since at least 1860 it has been the rule that objection to one

acting as special judge cannot be made for the first time on appeal.") (citing *Vandever v. Vandever*, 60 Ky. (3 Met.) 137, 138 (1860)).

For the foregoing reasons we conclude that Judge Morris properly presided over the trial proceedings in this case.

## II. THE PFO CONVICTION WAS PROPER

Harris next contends that his conviction as a second-degree persistent felony offender was based upon an incorrect interpretation of KRS 532.080(2) or, alternatively, that KRS 532.080(2) is unconstitutional. These contentions rest upon the fact that in defining PFO status, KRS 532.080(2) looks to the defendant's age *at the time of conviction,* rather than his age at the time the underlying crime is committed. Harris was twenty-years-old when the alleged crimes were committed on October 7–8, 2007, and when he was indicted three days later. However, he was twenty-one years old in January 2009, when he was indicted for second-degree PFO, and subsequently was convicted. We perceive no error in that conviction for the following reasons.

### 1. Statutory Interpretation Considerations

■ KRS 532.080(2) provides, as relevant to our review, as follows: "A persis-

---

**6.** In September 2009, the Governor appointed Judge Brian C. Edwards to the Division Eleven seat. In the November, 2010 general election, Judge Edwards was elected to fill the remainder of the term.

**7.** In *Rice v. Commonwealth*, 66 Ky. (3 Bush) 14 (1867), a defendant in a criminal matter and his surety challenged the validity of a bail bond "because the police judge [before whom the bond was executed] had been qualified before a notary public who had no legal authority to administer official oaths." Kentucky's then highest court rejected the challenge, holding:

[W]hen a man is exercising and discharging the general duties of an office, claiming right thereto under a commission or appointment, he is an officer *de facto;* and generally, if not universally, his acts are good as to third parties, however irregular his appointment or qualification[.] ... We do not say that, even as the police judge was acting under a regular commission and appointment, that this oath would be void; *but if it was legally invalid as to himself, his acts as to third parties, are binding.*
*Id.* at 17 (emphasis added); *See also Moorman v. Commonwealth*, 325 S.W.3d 325 (Ky. 2010).

tent felony offender in the second degree is a person *who is more than twenty-one (21) years of age and who stands convicted of a felony* after having been convicted of one (1) previous felony." (emphasis added). In *Hayes v. Commonwealth,* 660 S.W.2d 5 (Ky.1983), this Court determined that by the plain wording of KRS 532.080(2), a defendant is eligible for a PFO conviction if he is at least twenty-one years old at the time of his conviction, even though he may have been less than twenty-one at the time of the underlying crimes.

Being only twenty-years-old when the crime was committed, Harris was not *at that time* subject to being convicted as a PFO. However, when he turned twenty-one he became PFO eligible. Harris contends that it is fundamentally unfair and absurd that a defendant is subject to conviction as a second-degree PFO even though he was less than twenty-one at the time the crimes were committed. He urges that we overrule *Hayes* and reinterpret KRS 532.080(2) to provide that one may not be subjected to a PFO sentencing enhancement if he was under twenty-one years of age when the underlying crime was committed.

In *Hayes,* the defendant committed the offense of receiving stolen property when he was twenty-years-old, and turned twenty-one twelve days later. He was thereafter indicted for the underlying crime and as a second-degree PFO. *Hayes* addressed the issue as follows:

> The difficulty [with Hayes's argument] is that the language of the statute is plain and unambiguous. A person cannot be a persistent felony offender until he stands convicted of a second felony, and the statute provides that he is a persistent felony offender if at that time he is more than 21 years old. It makes no mention of age at the time of the commission of the second felony.

> [Hayes] would have us rewrite the statute to read in effect that a person is a persistent felony offender in the 2nd degree who stands convicted of a felony committed after he became 21 years of age if he had been convicted previously of a felony.

> We cannot take such liberties in construing a statute when the words used in the statute are not ambiguous, and the construction of the plain meaning of the words as written in the act does not reduce it to an absurdity.

> The General Assembly may have simply intended that no one under the age of 21 years at the time of trial should be weighed down with an enhanced sentence as a persistent felony offender. If it is the intention of the legislature that no one who is less than 21 years of age at the time of the commission of a second felony should be proceeded against as a persistent felony offender, that intention should be expressed by the legislature in the statute.

*Hayes,* 660 S.W.2d at 6.

By its plain wording, KRS 532.080(2) directs that the defendant's age for PFO purposes be examined at the time of his adjudication as a second-degree PFO ("*is* more than twenty-one"). It does not say "*was* more than twenty-one" at some former point in time (for instance, when the crime was committed). Moreover, KRS 532.080(2)(b) provides the additional criterion to PFO-eligibility "[t]hat the offender was over the age of eighteen (18) years *at the time the* [prior felony] *offense was committed* [.]" (emphasis added). By specifically requiring that the defendant be over eighteen at the time of the prior felony, but not specifically placing the same requirement as to the present felony, and instead avoiding that specific language, the legislature drew a clear distinction between the defendant's age at the

time the crime was committed and his age at the time of sentencing. As such, we are persuaded that *Hayes* properly interpreted the statutory language.

█ In the twenty-seven years since *Hayes* was rendered, KRS 532.080 has been amended and reenacted in new form on more than one occasion. *See, e.g.,* 2006 Ky. Acts c 182, § 45; 1998 Ky. Acts c 606, § 76; and 1996 Ky. Acts c 247, § 1. Nevertheless, in all that time, the statutory language under consideration remains undisturbed. Because the General Assembly has not acted upon the matter, we presume that the legislature agrees with, or at least has adopted, our interpretation. "[T]he failure of the legislature to change a known judicial interpretation of a statute [is] extremely persuasive evidence of the true legislative intent. There is a strong implication that the legislature agrees with a prior court interpretation when it does not amend the statute interpreted." *Rye v. Weasel,* 934 S.W.2d 257, 262 (Ky.1996).

Nevertheless, Harris urges us to adopt an alternate interpretation of the statutory language, as given in Justice Leibson's dissenting opinion in *Hayes.* We decline the invitation because doing so would require this Court to re-define the elements that establish a second-degree PFO enhancement of a felony offense. The power to define crimes and assign their penalties belongs to the legislature, not the judiciary. *See McClanahan v. Commonwealth,* 308 S.W.3d 694, 700 (Ky.2010). Thus, as we stated in *Hayes,* any change in our interpretation of KRS 532.080 must come as a result of legislative action.

Finally, we note that it is unlikely that random circumstances will play the inequitable role that Harris predicts as a result of our *Hayes* interpretation, whereby defendants will be unjustly persecuted because of this rule. A short delay in the trial because of weather, illness, and so on,

is unlikely to result in a PFO conviction due to a defendant's intervening twenty-first birthday. Moreover, we trust that our prosecutorial bar will not take unjust advantage of such random and fortuitous delays to seek PFO enhancements and bear the inherent ethical questions associated with that. Further, in the event of a *deliberate* delay by the Commonwealth in order to qualify the defendant for PFO eligibility, due process concerns such as those expressed in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in the speedy trial context, would no doubt short-circuit such efforts. The United States Supreme Court has "indicated on previous occasions that it is improper for the prosecution intentionally to delay 'to gain some tactical advantage over (defendants) or to harass them.'" *Id.* at 531 fn. 32, 92 S.Ct. 2182 (citing *United States v. Marion,* 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Pollard v. United States,* 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957).)

### 2. *Constitutional Considerations*

█ As an alternative to overruling *Hayes* by adopting a new interpretation of the statute, Harris asks that we declare KRS 532.080(2) unconstitutional as in violation of due process and Section 2 of the Kentucky Constitution. Harris makes clear that his challenge is a facial challenge, stating "[t]he Court must either change its reading of KRS 532.080 or must declare the statute unconstitutional." We begin by noting that this issue is not properly preserved. "When the constitutionality of an act of the General Assembly affecting the public interest is drawn into question in any action, the movant shall serve a copy of the pleading, motion or other paper first raising the challenge upon the Attorney General." CR 24.03. We have repeatedly held the notice provi-

sions are mandatory. *Benet v. Commonwealth,* 253 S.W.3d 528, 532 (Ky.2008). Harris does not suggest that he complied with this mandatory requirement. Nevertheless, we will briefly address the merits of this important argument.

■■■ It is a well established principle that "[a] facial challenge to a legislative Act is ... the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *Rust v. Sullivan,* 500 U.S. 173, 183, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991). "[T]he violation of the Constitution must be clear, complete and unmistakable in order to find the law unconstitutional." *Kentucky Industrial Utility Customers, Inc. v. Kentucky Utilities Co.,* 983 S.W.2d 493, 499 (Ky.1998). Thus, Harris's facial, challenge must fail because, even under his theory, KRS 532.080 would not be unconstitutional in the case of a defendant who was *over* twenty-one at the time he committed the underlying crime. Thus the statute is constitutional under that set of circumstances, and cannot withstand a facial constitutional challenge.

■■ Nor, under the circumstances of this case, does an as-applied constitutional challenge succeed. First, the statute was applied in accordance with this Court's interpretation of the provision in *Hayes,* which, as explained above, was determined correctly. Second, Harris's ability to mount an as-applied challenge to the statute is impeded by his failure to ask the trial court for an evidentiary hearing and the resulting findings of fact to establish any unfair pretrial delay that would render this application of the statute to be unconstitutional. Without such specifics, the argument Harris articulates is, in substance, not so much a challenge to constitutionality of the statute as it applied to him, but more of an expression of his belief that looking at the defendant's age at the time of sentencing as opposed to the time of the commission of the crime, is bad policy. So, again, we make clear:

> Determinations about the nature and purposes of punishment for criminal acts implicate difficult and enduring questions respecting the sanctity of the individual, the nature of law, and the relation between law and the social order. ... The efficacy of any sentencing system cannot be assessed absent agreement on the purposes and objectives of the penal system. And *the responsibility for making these fundamental choices and implementing them lies with the legislature.*

*Harmelin v. Michigan,* 501 U.S. 957, 998, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (citation omitted) (emphasis added). The legislature has made clear its policy with respect to the conditions that may qualify a convicted felon for the enhancement of a sentence as a persistent felony offender. It is not within the province of the Court to amend that policy.

In summary, KRS 532.080(2) is not facially unconstitutional because of its focus upon the age of the defendant at the time of sentencing rather than at the time of the commission of the crime; nor was the provision applied unconstitutionally in the present circumstances.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

All sitting. All concur.