**Rahim Adil Dante SHABAZZ, Appellant,**

v̇.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2003–SC–0022–MR.

Supreme Court of Kentucky.

Jan. 20, 2005.

Shelly R. Fears, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Atty. Gen., Rickie L. Pearson, George G. Seelig, Asst. Attys. Gen., Criminal Appellate Division, Frankfort, Counsel for Appellee.

KELLER, Justice.

## I. INTRODUCTION

Appellant, Rahim Shabazz, was convicted in the McCracken Circuit Court of two felony drug offenses, was found to be a First–Degree Persistent Felony Offender (PFO), and was sentenced to twenty years. Appellant raises two issues on appeal: (1) whether the prosecutor's questions to a witness on redirect, a prosecution witness's answers during cross-examination, and the prosecutor's statements during closing argument, all concerning whether Appellant requested that certain aspects of the case be investigated, prejudiced Appellant to such a degree as to require a mistrial; and (2) whether the prosecutor offered suffi-

cient evidence for the trial court to deny Appellant's motion for directed verdict on the PFO determination. We hold that a mistrial was unnecessary and that the evidence of Appellant's PFO status was sufficient to sustain the verdict, thus we affirm the judgment of the McCracken Circuit Court.

## II. BACKGROUND

In March 2001, the Paducah Police Department was in the process of conducting surveillance of Appellant's residence, a trailer located in McCracken County, Kentucky, on the suspicion that he was involved in drug activity. On March 29, 2001, Detective Scott Aycock carried out a covert "trash pull" during which he collected three large trash bags from outside Appellant's trailer. In one of the trash bags, Detective Aycock found a paper sack that contained what he believed to be marijuana seeds and buds; field tests confirmed that the items were, in fact, marijuana. Detective Aycock used this information to obtain a search warrant for Appellant's trailer.

Early in the morning of March 30, 2001, Detective Aycock and two other officers, after a brief surveillance of the trailer, knocked on Appellant's door. No one answered, although the officers heard someone running through the trailer. The officers contacted the landlord to open the front door, but the landlord's key did not work. Detective Aycock turned off the water to the trailer to ensure that any drugs in the residence could not be disposed of by flushing them down the toilet. Approximately twenty to twenty-five minutes after the police first arrived, Appellant opened the door. After displaying the search warrant, the officers searched the residence and found a variety of items: several bags of marijuana; a .40 caliber pistol; a notebook containing addresses,

phone numbers, and numerical computations; a digital scale; plastic "baggies"; and about $450.00 in cash. The officers arrested Appellant, advised of him of his *Miranda* rights, and took him to the Paducah Police Department where Sergeant Eric Jackson interviewed him. During this interview, Appellant admitted to selling marijuana and to possession of the pistol for personal protection.

Appellant was indicted on four counts: (1) Trafficking in Marijuana, Over Eight Ounces, Less than Five Pounds, First Offense, with a Firearm Enhancement; (2) Use/Possession of Drug Paraphernalia with a Firearm Enhancement; (3) Possession of a Firearm by a Convicted Felon; and (4) First–Degree Persistent Felony Offender (PFO). The trial court severed the third count, and the convictions that Appellant now appeals stem from the other three counts. Though it is not germane to the issues in this appeal, for the sake of completeness, we note that Appellant has been tried on these three counts two times. After the first trial, the trial court granted Appellant a new trial because some inadmissible evidence came in through a prosecution witness. This appeal arises from Appellant's second trial on these counts, and references to Appellant's trial hereinafter are to this second trial.

During cross-examination at trial, Appellant's lawyer highlighted issues that the Commonwealth had failed to investigate. For example, during cross-examination of Detective Aycock, Appellant's lawyer asked him a series of questions regarding whether the notebook found in Appellant's trailer actually contained evidence of drug activity. Detective Aycock revealed that the notebook contained several names and phone numbers, including a number for someone named "Shareeta" and some calculations of monetary amounts varying

from $300 to $2000. The cross-examination also included the following exchange:

Q: Did you call the phone number to find out if Shereeta [Shareeta] knew anything?

A: No, sir.

Q: So we don't know whether Shareeta might have been someone he was interested in dating or whether she was somebody that might have been involved in drug trafficking? You don't know that.

A: You'll have to ask your client, sir. I don't know.

Q: But your investigation did not include calling that number?

A: No, sir.

Appellant's lawyer also asked Detective Aycock whether he had had the gun that was found in the ductwork of Appellant's trailer processed for fingerprints and whether any fingerprint evidence linking Appellant to the gun would be introduced. Detective Aycock responded in the negative to both questions.

The prosecutor addressed this line of questioning on re-direct by asking, "Did the defendant ask you, 'Hey, you didn't call Shareeta, she sells me widgets'?" Appellant objected and the trial court sustained the objection, stating that the matter was not relevant because the detective had already confirmed that he had not called anyone and telling the prosecutor to "move on." The prosecutor also asked, "Now Mr. Preston [defense counsel] didn't call you and ask you to have the gun checked for fingerprints, did he?" Detective Aycock responded in the negative and Appellant objected to the question, stating that Appellant was under no obligation to do so. The prosecutor withdrew the question.

During Appellant's cross-examination of Sergeant Jackson, in response to a query regarding whether Jackson had sent the gun for fingerprint analysis, Jackson responded:

No sir. And I'm glad he didn't do it. I'd have probably been upset since he confessed to it. I'd [have] just clogged up the lab more. We have, you know, we have that call. If he confesses to the gun, which he did, there's no need to fingerprint it. However, you have that right, you could've asked that it be fingerprinted. But after he confessed to it, then there was no need to.

Appellant's attorney objected and asked that the last part of Sergeant Jackson's answer, namely the "you have that right, you could've asked that it be fingerprinted" portion, be stricken from the record, but the trial court overruled the objection.

Just before instructions were read to the jury, Appellant's lawyer moved for a mistrial on the basis of the frequency of references by the prosecution's witnesses to what Appellant "could have done." The trial court refused to grant a mistrial but hinted at the possibility of an admonition to the jury. After some discussion, Appellant's attorney requested an admonition, but the trial court refused to grant one because it would simply have drawn more attention to the issue.

During his closing argument, Appellant's lawyer attempted to demonstrate that the scales found in Appellant's residence could be used to measure or weigh something other than drugs. He stated, "What [other units of measurement] are you going to have on the set of scales other than grams and ounces...that's what you measure cheese, that's what you measure food, anything that you measure comes in grams and ounces, because that's what you measure weight in." The prosecutor followed up on this issue during his closing argument by asking: "Did you hear any testimony about cheese being there?" He also

**810**

addressed issues that Appellant's attorney had raised during cross-examination, set forth above, stating:

> Mr. Preston [Appellant's lawyer], he's tried, I guess he's tried, to parlay this back on me, is what he's tried to do. Now, I don't want you to take this in any way, shape, form, or fashion that I'm saying that he has to prove anything. I'm not. He [Appellant] enjoys the constitutional right, and you should respect that to the fullest extent that it exists, that he doesn't have to prove anything, and I'm not saying he does. But you know what, if he tries to take that constitutional protection and turn it on me and use it on me as a sword, and say, "Well, you didn't do this, and you didn't do that," it is absolutely valid for you to question, "Well, Mr. Preston, if you thought that was important and you had the right to ask for it, why wouldn't you ask for it? If you thought it was going to exonerate your client, why wouldn't you ask for it?" It was absolutely valid for you to ask that question. I'm not saying it's his job, but what I'm saying is if he's going to try to turn it around and say, "Boy, you really should have done this," then if he thought it was so important, he would have done it himself.

Appellant's lawyer then objected, stating that the prosecutor's argument had gone "over the line," and the trial court overruled the objection.

The jury found Appellant guilty of the trafficking and paraphernalia charges. During the penalty phase of the trial, the prosecutor introduced evidence of Appellant's three earlier felony convictions, in the form of certified copies of the indictments and judgments in those cases, and a chart explaining parole eligibility. The prosecutor also called Detective Aycock who testified as to Appellant's birthday and his age at the time of the prior convictions. Detective Aycock also testified that each of Appellant's convictions resulted in a sentence of three years or more and that his 1996 cocaine possession conviction was within five years of the charges in this case. Appellant's lawyer moved for a directed verdict on the PFO status, but the trial court overruled the motion. The jury found that Appellant was a First–Degree PFO and recommended a sentence of ten years on the trafficking count and five years on the drug paraphernalia count, both counts PFO enhanced to a total of twenty years. The trial court sentenced Appellant to twenty years. Appellant now appeals to this court as a matter of right.[1]

### III. ANALYSIS

#### A. Motion for a Mistrial

■ Appellant claims that the trial court erred in failing to grant a mistrial. He argues that a mistrial was warranted because some of the re-direct questions to Detective Aycock, the testimony from Sergeant Jackson, and the prosecutor's comments during his closing argument prejudiced the jury against him and denied him his right to a fair trial. Appellant claims that these statements amounted to an attempt to shift the burden of investigation as well as the burden of proof from the Commonwealth and that the trial court abused its discretion in failing to grant a mistrial.

■ When a party moves for a mistrial, the trial court must determine whether there is a "manifest necessity" for a new trial.[2] The purpose of this standard is to

1. KY. CONST. § 110(2)(b).

2. *Gould v. Charlton Co., Inc.,* 929 S.W.2d 734, 738 (Ky.1996).

reserve the extraordinary relief of declaring a mistrial for situations in which an error has been committed that is of such magnitude that the litigant would be denied a fair and impartial jury absent a new trial.[3] "It is universally agreed that a mistrial is an extreme remedy and should be resorted to only when there is a fundamental defect in the proceedings which will result in a manifest injustice."[4] In accordance with this standard, appellate courts review a trial court's refusal to grant a mistrial for an abuse of discretion.

Appellant argues that the prosecution's questions posed to Detective Aycock and the cross-examination answers from Sergeant Jackson "reveal[ ] a concerted effort by the prosecution and its agents (the police witnesses), which borders on outright misconduct, to improperly shift the burden of proof to Appellant during the trial." But Appellant's hyperbole is unpersuasive. First of all, Appellant's lawyer opened the door to the prosecutor's line of questioning of Detective Aycock. So long as the prosecution does not claim that a defendant has a duty to investigate the case, e.g., by checking evidence for fingerprints or by asking the police to call phone numbers found in evidence, such questions are fair comment in light of the nature of the cross-examination by the defendant's lawyer. More importantly, the trial court alleviated any problem created by the first question by sustaining the objection, and the prosecutor alleviated any concern over the second question by withdrawing it. Appellant's lawyer preserved no further error because he did not ask for an admonition to be given to the jury to disregard the prosecutor's questions.

Sergeant Jackson's allegedly objectionable response was to a question posed by Appellant's lawyer. Rather than being an attempt to shift the burden of proof to Appellant, Sergeant Jackson's response was merely part of his explanation of why he did not request fingerprint testing. His answer contained no implication that Appellant bore the burden of having the gun tested. As such it was not improper.

If there was any error in the questions asked of Detective Aycock by the Commonwealth and the answers given by Sergeant Jackson, it was minor and did not create a "manifest necessity" for a mistrial. The trial court did not abuse its discretion in refusing to grant a mistrial on these grounds.

Appellant also complains that the prosecutor's commentary during his closing argument was further evidence of an attempt to shift the burden of proof by implying that Appellant could have taken certain steps to prove his innocence and, because he did not take those steps, he was guilty, thus absolving the Commonwealth of the requirement to prove guilt beyond a reasonable doubt. Appellant states that because he was under no duty to take any action, the Commonwealth's attempt to persuade the jury otherwise warrants reversal. Further, Appellant claims that the Commonwealth attempted to insulate the improper comments made in closing argument by insisting that Appellant was not required to prove anything and that he was entitled to his constitutional rights. Appellant maintains that the prosecutor was "speaking out of both sides of his mouth," on the one hand stating that Appellant was entitled to certain constitutional considerations, and on the other hand questioning Appellant's failure to prove his innocence. Appellant claims that this behavior was misleading and confusing to the jury and therefore improper. He main-

---

**3.** *Id.* at 737–38.

**4.** *Id.* at 738.

tains that the prosecutor's continued focus on this topic suggested that Appellant had an obligation to testify and prove his innocence. Appellant contends that the overall effect of these statements diminished the fairness of his trial and prejudiced the jury against him.

We find that the comments at issue did not constitute a fundamental defect in the proceedings such that the entire trial was tainted as a result of these statements. In *Beam v. Foltz,*[5] the defendant's strategy at trial was to argue that the prosecution should have performed more tests on some of the evidence. In response, the prosecutor argued that he bore no duty to perform further tests or to try to prove the defendant innocent. As to this the Sixth Circuit Court of Appeals held the following:

> We agree with the petitioner that the prosecutor's argument did have some tendency to mislead insofar as it suggested that "at least to some extent that duty and that job [of trying to prove ... the Defendant is innocent] is left to the defense." " '[I]n the heat of argument, counsel do occasionally make remarks that are not justified,' " but in the context of Mr. Beam's trial as a whole, we do not believe either that the jury could have been under any misapprehension as to what the law actually requires or that the prosecutor's statement was so egregious as to render the trial fundamentally unfair.[6]

We agree with the Sixth Circuit's analysis and find it applicable to this case. Be-

cause there was a great deal of uncontroverted evidence linking defendant to the charged crimes, e.g., his confession where he admitted to owning the gun in question, and the jury was instructed that the Commonwealth had the burden of proving each element of every charge, the trial court did not abuse its discretion in refusing to grant a mistrial.

## B. Motion for a Directed Verdict

■ Appellant next claims that the trial judge committed reversible error in denying his motion for a directed verdict on the PFO determination. Appellant argues that the Commonwealth presented insufficient evidence to prove that Appellant was on probation, parole, conditional discharge, et cetera[7] at the time he committed the offense, thus the PFO status was conferred based on insufficient evidence and warrants reversal.

The instructions in this phase of the trial were as follows:

Instruction No. 6

(First Degree Persistent Felony Offender)

You will find the defendant, Rahim Shabazz, guilty of being a First–Degree Persistent Felony Offender under this Instruction if and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That prior to March 30, 2001, the Defendant was convicted of First–De-

---

**5.** 832 F.2d 1401 (6th Cir.1987).

**6.** *Id.* at 1407–08 (citation omitted, alterations in original).

**7.** *See* KRS 532.080(2)(c)(2) ("A persistent felony offender in the second degree is a person who is more than twenty-one (21) years of age and who stands convicted of a felony after having been convicted of one (1) previous felony. As used in this provision, a previous

felony conviction is a conviction of a felony in this state or conviction of a crime in any other jurisdiction provided: ... (c) That the offender ... 2. Was *on probation, parole,* conditional discharge, conditional release, furlough, appeal bond, or any other form of legal release from any of the previous felony convictions at the time of commission of the felony for which he now stands convicted....").

gree Possession of a Controlled Substance by final judgment of the Graves Circuit Court, Graves County, Kentucky on October 20, 1997, AND that prior to committing the offense for which he was convicted on October 20, 1997, he was convicted of First–Degree Possession of a Controlled Substance by final Judgment of the McCracken Circuit Court, McCracken County, Kentucky on June 24, 1993;

B.   That he was eighteen years of age or older when he committed both of the offenses of which you believe he was convicted;

C.   That pursuant to those two convictions, he was sentenced to a term of imprisonment of one (1) year or more;

D.   That he was on probation, parole, conditional discharge, conditional release, or furlough or appeal bond, from at least one such prior conviction at the time he committed the offense of which you have found him guilty in this case; AND

E.   That he is now twenty-one years of age or older.

Appellant contends that the Commonwealth did not present direct evidence to demonstrate that Appellant satisfied the requirements of subsection D of Instruction No. 6. Appellant argues that there was no testimony or evidence that Appellant actually served any of the sentences or, more importantly, that he was on probation, parole, conditional discharge, conditional release, or any other form of legal release prior to the date of the commission of the crimes involved in this case.

As the Commonwealth points out, however, evidence of Appellant's probation status was presented to the jury. Appellant was convicted in Graves Circuit Court in 1997 of cocaine possession, but his sentence was probated for five years. Evidence of this was presented to the jury in the form of an Order of Probation/Conditional Discharge that was entered on October 20, 1997 and was part of the certified copy of the indictment and judgment from Graves Circuit Court (96–CR–0019). The crimes in this case were alleged to have occurred on or about March 30, 2001, thus they fall within the probation period listed in the Order. As such, there was evidence presented to the jury that Appellant was on probation when he committed the crimes in this case. The question, then, becomes whether such evidence is sufficient to avoid a directed verdict on the PFO charge. We hold that it is.

Appellant cites to *Davis v. Commonwealth* [8] where we "reiterate[d the] conclusion" [9] that the Commonwealth "cannot, by inference or guesswork, confer PFO status on anyone." [10]   This reiterated conclusion stemmed from *Hon v. Commonwealth*, [11] where we held that "it is improper for proof of an inferential nature to be used to obtain and sentence a conviction under [the PFO statute]." [12]   But our law on the sufficiency of the evidence required to support a PFO charge has been in flux recently, and our latest pronouncement established that "[a] reasonable inference is sufficient to meet the requirements of the PFO statute." [13]   In doing so, we expressly "overruled [*Hon*] to the extent that it

---

**8.**   899 S.W.2d 487 (Ky.1995).

**9.**   *Id.* at 490.

**10.**   *Id.*

**11.**   670 S.W.2d 851 (Ky.1984).

**12.**   *Id.* at 853.

**13.**   *Martin v. Commonwealth,* 13 S.W.3d 232, 235 (Ky.2000).

degrade[d] the standard of a reasonable inference to that of guesswork."[14]

Though we did not expressly mention *Davis* in *Martin*, it too was overruled to the extent that it degraded the standard of a *reasonable* inference. This makes sense in light of the facts presented by *Davis* as opposed to those presented in *Martin* and this case. In *Davis*, the only evidence to support the defendant's PFO finding was testimony from a detective for the Commonwealth's Attorney's office who testified as to the defendant's probationary status but who also "admitted that he had no knowledge of such status."[15] Instead, the detective had "us[ed] simple subtraction"[16] to arrive at the opinion that the defendant was on probation when he committed the crime in question. In *Martin*, the Commonwealth presented direct evidence that defendant had been previously convicted within five years of committing the crimes by having the Barren Circuit Court Clerk testify. The Clerk admitted that she "just ha[d] the indictment and ... the judgment"[17] and testified as to those dates.

Though the Commonwealth was proceeding under KRS 532.080(3)(c)(1) in *Martin*, as opposed to KRS 532.080(3)(c)(2), as was the case in *Davis* and in this case, the reasoning in *Martin* applies in this case. We distinguished the facts in *Martin* from those in *Davis* by noting that "the record ... is not entirely silent as it was in *Davis* as to the probationary status of [the defendant]." Technically speaking, however, the record was not entirely silent in *Davis;* but the evidence presented was problematic in that the record contained no *competent* evidence as to the defendant's probationary status because the testimony on that point

was from a witness who admitted to having no knowledge of the matter. In that sense, the record was silent as to the defendant's probationary status. In *Martin*, competent evidence, in the form of the testimony of the Circuit Clerk, who was reading from the indictment and judgment of conviction, was introduced.

In this case, rather than having the Clerk read from the indictment and judgment, the Commonwealth simply introduced certified copies of Appellant's indictments and judgments, including the Order of Probation. As such, the Commonwealth presented evidence analogous to that in *Martin* that Appellant's prior conviction for possession of cocaine, which resulted in a five-year probated sentence, was entered within five years of the current offense. This, in turn, allows for the reasonable inference that Appellant was still on probation when he committed the offenses in question in this case. Admittedly, the Commonwealth did not present any evidence as to whether Appellant had been released from probation "by virtue of executive clemency, reversal on appeal, release by way of habeas corpus, or by other means whereby persons serving felony sentences may gain relief,"[18] but requiring such a showing, i.e., the almost impossible task of proving a negative, is exactly the sort of reduction of the status of a reasonable inference to the level of guesswork that *Martin* expressly overruled. We have also previously held that the burden of proving such *negatives is on the defendant:*

> It is a general rule running through the law of evidence that where the negative of an issue does not permit of direct

14. *Id.*

15. *Davis*, 899 S.W.2d at 490.

16. *Id.* at 489.

17. *Martin*, 13 S.W.3d at 233.

18. *Davis,* 899 S.W.2d at 490.

proof, or where the facts are more immediately within the knowledge of the defendant, the burden of proving that such averment is not true rests upon him.[19]

The evidence in this case established that Appellant had been placed on probation in 1997 and that he had committed the crimes in this case in 2001. This created a reasonable inference that Appellant was on probation when he committed the crimes in this case. And even though this reasonable inference is one likely to be arrived at through the sort of "simple subtraction" that was frowned upon in *Davis,* we note that such subtraction, when combined with competent evidence, is sufficient to create a *reasonable* inference in this case.

█ "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal."[20] Under this standard, we find that the trial court did not err in refusing to grant a directed verdict.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the McCracken Circuit Court is affirmed.

LAMBERT, C.J.; COOPER, GRAVES, JOHNSTONE, SCOTT and WINTERSHEIMER, JJ., concur.

**19.** *Eary v. Commonwealth,* 659 S.W.2d 198, 200 (Ky.1983) (quoting *Duvall v. Commonwealth,* 593 S.W.2d 884, 886 (Ky.App.1979)).

**20.** *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991) (citations omitted).