Arnold MOORE, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee

2013–SC–000495–MR

Supreme Court of Kentucky.

RENDERED: JUNE 11, 2015

Counsel for Appellant: Samuel N. Potter, Assistant Public Advocate

Counsel for Appellee: Jack Conway, Attorney General of Kentucky, James Daryl Havey, Assistant Attorney General

## OPINION OF THE COURT BY JUSTICE VENTERS

Appellant, Arnold Moore, appeals from a judgment of the Lawrence Circuit Court imposing a sentence of fifty years' imprisonment following a jury trial in which he was convicted of manufacturing methamphetamine (first offense), first-degree possession of a controlled substance, and of being a first-degree persistent felony offender (PFO). Appellant alleges two errors: (1) the trial court refused to allow his girlfriend to testify under the statements-against-interest exception to the general exclusion of hearsay evidence about certain out-of-court statements uttered to her by a declarant whose unavailability at trial was not shown; and (2) the trial court declined to grant a directed verdict on the PFO charge.

We reject Appellant's arguments with respect to the trial court's evidentiary ruling excluding the hearsay testimony of Melinda Keeton, and so we affirm his convictions for the offenses of manufacturing methamphetamine (first offense) and first-degree possession of a controlled substance. However, based upon our conclusion that the evidence presented was insufficient to sustain the PFO verdict, we reverse that conviction and vacate the en-

hanced sentence arising therefrom. We remand the case to the Lawrence Circuit Court for sentencing on the underlying felony convictions and entry of a judgment consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the fall of 2011, an unidentified woman entered the sheriff's office in Lawrence County to complain of criminal activity at a house rented by Appellant. Two police officers went to investigate. Upon arriving at the house, they smelled ammonia, an odor commonly associated with the manufacture of methamphetamine, and they saw Appellant fleeing from the side entrance of the house. Upon command from the officers, he halted and joined them on the front porch where he gave the officers permission to enter the house.

Almost immediately after entering, the officers encountered Rodney Young. They escorted both Young and Appellant outside, placed them in separate cruisers, and informed them of their *Miranda* rights. A search of the residence produced an array of methamphetamine paraphernalia and ingredients indicative of an active methamphetamine lab. At the scene, Appellant admitted to using and manufacturing methamphetamine.

Appellant was indicted for manufacturing methamphetamine (first offense), first-degree possession of a controlled substance, and for being a first-degree persistent felony offender. At the conclusion of the guilt phase of the trifurcated trial, the jury returned a guilty verdict on both drug offenses and, during the sentencing phase, recommended a sentence of fifteen years' imprisonment. In the phase that followed, the jury convicted Appellant of being a first-degree persistent felony offender, for which the jury recommended an enhanced sentence of fifty years' imprisonment.

The trial court accepted the jury's recommendation and sentenced Appellant accordingly.

## II. ANALYSIS

### A. Mere Speculation That a Witness may Assert his Right Against Self-Incrimination Does not Render a Witness Unavailable for Purposes of KRE 804(b)(3).

At the time of his arrest, Appellant was involved in a romantic relationship with Melinda Keeton. Appellant's cousin, Jason Moore, and Jason's brother, Dale Moore, reportedly resented this relationship. Dale had been Keeton's long-time boyfriend. Shortly after breaking up with Dale, Keeton began cohabiting with Appellant. She gave birth to Appellant's child; the child was eight-months old at the time of Appellant's arrest.

While Appellant awaited trial, Keeton was jailed on a matter unrelated to this case. At the same time, Dale was lodged in the same jail and the two were placed in adjacent holding cells. According to Keeton, Dale made three critical statements to her during their time together in jail: (1) he had set up Appellant for his pending prosecution; (2) he was glad Appellant was going down for something he did not do; and (3) he was glad Appellant's child would grow up without a father.

At trial, Appellant attempted to mount an alternative perpetrator defense. In support of this defense, he called Keeton to testify to the exculpatory; statements purportedly uttered to her by Dale while they were incarcerated together. The trial court sustained the Commonwealth's objection to Keeton's proposed testimony on hearsay grounds. Appellant properly inserted Keeton's avowal testimony into the record to preserve the trial court's ruling for appeal.

■ Hearsay—an out-of-court statement by a declarant offered to prove the truth of the matter asserted—is generally inadmissible at trial unless "it meets one of our well established exceptions." *Wells v. Commonwealth*, 892 S.W.2d 299, 301 (Ky. 1995); KRE 802. These exceptions, "supported by the theory that the character and context of [the] statement adds sufficient reliability to permit admission[,]" "grew from ancient common law." *Id.* The only exception potentially applicable to the instant case is the "statement against interest" exception codified as KRE 804(b)(3).

KRE 804(b)(3) allows the admission of a "statement which ... so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." However, before we examine whether Dale's statements to Keeton would qualify under KRE 804(b)(3) as a "statement against interest," we must first address the overarching condition for admitting any of the hearsay exceptions covered by KRE 804: the unavailability of the declarant as a witness. At this point, Appellant's argument crumbles.

In the broad sense, KRE 804 applies only to situations in which the declarant—the individual whose out-of-court statements are proffered as evidence—is unavailable as a witness.

Unavailability of the declarant arises when the declarant: (1) is "exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement"; (2) "[p]ersists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so"; (3) "[t]estifies to a lack of memory of the subject matter of the declarant's statement"; (4) "[i]s unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity"; or (5) "[i]s absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance by process or other reasonable means." KRE 804(a)(*l*)-(5).

It is conceded that Dale's alleged jailhouse statements are against his penal interest.[1] And, although these out-of-court statements may be construed as tending to exonerate Appellant, Appellant has never shown that Dale was unavailable to personally testify at trial about the subject matter of the statements. Appellant argues that if Dale had been called to testify at trial, he would have invoked his privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution. But because no one attempted to procure Dale's testimony at trial, Appellant's claim is nothing more than conjecture. Appellant's argument runs headlong into our own precedent addressing this issue.

In *Marshall v. Commonwealth*, 60 S.W.3d 513 (Ky.2001), we rejected virtually the same argument Appellant attempts to now promote. *Marshall* involved the Commonwealth's attempt to admit a complicitor's out-of-court statements through his father's testimony. The trial court in *Marshall* concluded that the declarant was unavailable and so it permitted the hearsay evidence to be admitted. Like Appellant in this case, the Commonwealth in

---

1. With respect to statements exposing a declarant to penal, rather than civil, liability, KRS 804(b)(3) imposes the additional requirement that the statement "is not admissible unless corroborating circumstances clearly indicate [its] trustworthiness[.]" Because of our disposition of the matter based upon lack of proof that Dale was "unavailable," we need not further address this point.

*Marshall* had "made no attempt to call [the complicitor] to the stand but only asserted [the complicitor] *could* claim the privilege if called." *Id.* at 519. This Court reversed the trial court, rejecting the notion that the declarant's unavailability could be established on such thin speculation. Indeed, "[i]n order to satisfy the requirements of the Confrontation Clause, the prosecution must at least make a good faith effort to obtain the declarant's presence at trial." *Id.* We then emphatically stated what is required when the Fifth Amendment privilege is asserted as the basis for a declarant's unavailability:

> A trial court cannot merely rely on the Commonwealth's assurances of unavailability in deciding to admit hearsay evidence that is conditioned upon unavailability. Before a declarant may be excused as unavailable based on a claim of privilege, the declarant must appear at trial, assert the privilege, and have that assertion approved by the judge.

*Id.* (citations omitted). This rule set forth in *Marshall* is not a novel concept. In fact, it is nothing more than a straightforward reading of KRE 804(a)(1), which requires a "ruling of the court on the ground of privilege from testifying" before excusing a declarant as unavailable. Here, the record simply does not indicate that Appellant attempted in good faith to secure Dale's presence as a witness or that Dale otherwise invoked his privilege against self-incrimination.

It is certainly possible, if not likely, that Dale would have invoked his privilege given the instant circumstances, but KRE 804 requires more than that mere supposition. Indeed, regardless of whether Appellant is correct in his assessment of Dale's strategy, speculation—correct or not—does not satisfy the requirements of KRE 804(a)(1). Therefore, none of the hearsay exceptions

provided by KRE 804, including KRE 804(b)(3), apply. As such, the trial court correctly declined Appellant's attempt to introduce Dale's statements through Keeton's testimony.

**B. The Commonwealth Failed to Introduce Sufficient Evidence to Permit the Jury to Draw a Reasonable Inference of Appellant's PFO Status.**

■ Appellant's remaining argument is that the Commonwealth failed to present sufficient proof to establish all of the necessary elements of a PFO charge, and therefore the trial court erred by failing to grant a directed verdict on that charge. Rather than calling witnesses to provide testimony to establish the essential elements of Appellant's PFO status, the Commonwealth introduced certified copies of Appellant's prior convictions. Appellant asserted at trial, and reasserts on appeal, his argument that the documentary evidence so adduced did not adequately provide the necessary information from which the jury could reasonably infer that Appellant met the criteria for PFO status. He argues that he was entitled to a directed verdict dismissing the PFO charge. For the reasons explained below, we agree.

The jury convicted Appellant of the underlying offenses of manufacturing methamphetamine (first offense) for which it recommended a sentence of fifteen years' imprisonment; and first-degree possession of a controlled substance for which it recommended a sentence of three years. The jury recommended that the sentences be served concurrently. The jury then made the additional determination that Appellant was a first-degree persistent felony offender, and as a result of the PFO sentencing enhancement, the jury ultimately sentenced Appellant to fifty years' imprisonment. Accordingly, thirty-five years of Appellant's fifty year sentence is exclusive-

ly the consequence of his PFO status. This sentencing progression unambiguously illustrates the importance of the PFO stage of the trial, and it demonstrates with disquieting clarity why the PFO phase of the trial is not a lesser aspect of the trial proceedings, undeserving of even a single witness to testify regarding how the defendant falls within the criteria of KRS 532.080 such that he may, beyond a reasonable doubt, be adjudged eligible for the enhanced sentence.

As relevant here, to establish that Appellant was eligible for the sentencing enhancements provided for first-degree persistent felony offenders, KRS 532.080(3) required the Commonwealth to prove beyond a reasonable doubt all of the following: (a) that Appellant was more than twenty-one years of age;[2] (b) that he stood convicted of a new felony offense; (c) that he was previously convicted of two other felony offenses for each of which he was sentenced to a term of imprisonment of at least one year; and (d) that he was over eighteen years of age when he committed the prior felony offenses. Appellant does not challenge the sufficiency of the Commonwealth's proof on any of those elements.

However, pursuant to KRS 532.080(3)(c), the Commonwealth was further required to prove beyond a reasonable doubt at least *one* of the following facts:

That Appellant:

1. Completed service of the sentence imposed on any of the previous felony convictions within five (5) years prior to the date of the commission of the felony for which he now stands convicted; or

2. Was on probation, parole, postincarceration supervision, conditional discharge, conditional release, furlough, appeal bond, or any other form of legal release from any of the previous felony convictions at the time of commission of the felony for which he now stands convicted; or

3. Was discharged from probation, parole, postincarceration supervision, conditional discharge, conditional release, or any other form of legal release on any of the previous felony convictions within five (5) years prior to the date of commission of the felony for which he now stands convicted; or

4. Was in custody from the previous felony conviction at the time of commission of the felony for which he now stands convicted; or

5. Had escaped from custody while serving any of the previous felony convictions at the time of commission of the felony for which he now stands convicted.

KRS 532.080(3)(c).

The factual alternatives enumerated in KRS 532.080(3)(c) are of no lesser significance than the other elements of PFO status mentioned above. While subsection (3)(c) obviously provides some leeway as to which specific provisions are applicable in any particular case, it is imperative for the Commonwealth to prove at least one of the factual alternatives beyond a reasonable doubt.

Although in its brief filed with this Court the Commonwealth does not explicitly identify which subsection of KRS 532.080(3)(c) is applicable, it does assert

---

**2.** *See Harris v. Commonwealth,* 338 S.W.3d 222, 227 (Ky.2011) (KRS 532.080 "focus[es] upon the age of the defendant at the time of sentencing rather than at the time of the commission of the crime.") *See also Hayes v. Commonwealth,* 660 S.W.2d 5 (Ky.1983)

("The PFO statutes provides that a defendant is eligible for a PFO conviction if he is at least twenty-one years old at the time of his conviction, not when his current felony offense was committed.").

that "Appellant's prior felony convictions contained enough information for the jurors to reasonably infer he had served out the most recent sentence within five years prior to the underlying felony offenses in this case," thus implying that subsection (1) of KRS 532.080(3)(c) is the applicable provision. And, that was the only alternative upon which the jury was instructed. Therefore, the question is whether evidence was presented to permit the jury to reasonably infer that Appellant had "completed service of the sentence imposed on any of the previous felony convictions within five (5) years prior to the date of the commission of [his current offenses, manufacturing methamphetamine and first-degree possession of a controlled substance.]"

Appellant's present crimes were committed October 24, 2011; thus, the critical time span for applying subsection (1) runs back to October 24, 2006. The only evidence offered to prove that Appellant potentially fits within either of those alternatives was the judgment documenting Appellant's March 13, 2006 felony conviction,[3] and a document describing parole eligibility guidelines that was introduced during the initial sentencing phase of the trial. No witnesses testified.

The March 2006 judgment reflects that Appellant was sentenced to two years' imprisonment with jail credit of 77 days, and that he was denied release on probation. Nothing was presented to show explicitly whether Appellant completed the sentence or whether he was later granted shock probation or parole; nothing was introduced concerning Appellant's fate following the entry of the March 13, 2006 judgment.

In assessing whether Appellant was entitled to a directed verdict on the PFO charge, we apply the familiar standard as stated in *Commonwealth v. Benham*, 816 S.W.2d 186, 187–88 (Ky.1991). Pursuant to that standard, we review the evidence in each case to determine whether from the evidence presented, considered in the light most favorable to the Commonwealth, a reasonable jury could reasonably believe beyond a reasonable doubt all of the elements of the crime needed to fairly find guilt. *Id.* As previously noted, we conclude that the Commonwealth's evidence falls short of meeting that burden.

The Commonwealth contends that all of the essential elements required for the PFO conviction under KRS 532.080(3)(c)(1) could be gathered from the face of the March 2006 judgment, or from "reasonable inferences" drawn from the judgment. Specifically, the Commonwealth cites to *Shabazz v. Commonwealth*, 153 S.W.3d 806, 813 (Ky.2005) and *Martin v. Commonwealth*, 13 S.W.3d 232, 235 (Ky.1999), *as modified on denial of reh'g (Feb. 24, 2000)*, for the proposition that the elements of a PFO conviction may be proven by "reasonable inferences" drawn from the evidence. "A reasonable inference is sufficient to meet the requirements of the PFO statute." *Shabazz* at 813, *quoting Martin*. In *Martin*, we clarified in this context what we mean by "a reasonable inference." We said:

> An inference is the act performed by the jury of inferring or reaching a conclusion from facts or premises in a logical manner so as to reach a conclusion. A reasonable inference is one in accordance with reason or sound thinking and

**3.** The relevant judgment was signed by the trial judge on March 13, 2006, but stamped as "Entered" by the clerk on March 15, 2006. The judgments documenting Appellant's other felony convictions date back to 1994 and are clearly out of the range required to establish one of the alternatives of KRS 532.080(3)(c).

within the bounds of common sense without regard to extremes or excess. It is a process of reasoning by which a proposition is deduced as a logical consequence from other facts already proven. Guesswork, on the other hand, is the process of making a judgment without adequate information, or to conjecture, or to speculate.

*Martin*, at 235.

At this juncture, it is important to note that neither *Shabazz* nor *Martin* relax to any extent the reasonable doubt standard of proof for *all* elements of a criminal offense, including the enhancement provisions of the PFO statutes; nor could they. The United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) holds that "[o]ther than the fact of a prior conviction, *any* fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and *proved beyond a reasonable doubt.*" (emphasis added). Indeed, we emphasized in *Martin* that "[t]he Commonwealth still has the burden of proof as to every element of the PFO status beyond a reasonable doubt." 13 S.W.3d at 235. *See also Merriweather v. Commonwealth,* 99 S.W.3d 448, 452 (Ky.2003) ("Proof of Appellant's prior convictions was an indispensable element of the PFO charge. Accordingly, proof beyond a reasonable doubt was required of the Commonwealth.").

Based upon the principles described above, our review must focus on the question of whether, from the evidence provided, and primarily the 2006 judgment, a reasonable juror could have inferred "in accordance with reason or sound thinking and within the bounds of common sense without regard to extremes or excess" all of the essential elements of a PFO conviction, and specifically, the applicable provision of KRS 532.080(3)(c) so as to fairly find guilt beyond a reasonable doubt.

In *Shabazz,* like the case now before us, no witnesses testified at the PFO stage of the trial. There, the Commonwealth introduced certified copies of Shabazz's indictments (apparently to show when the prior offenses were committed), the resulting judgments, and an October 20, 1997, Order of Probation that placed Shabazz on probation for five years. His current felony offenses were committed 3½ years later, on March 30, 2001. We held in *Shabazz,* and we agree now, that a reasonable juror could reasonably infer that the defendant was still on probation when he committed his current crimes.

The probation order in *Shabazz* demonstrated with sufficient clarity to support belief beyond a reasonable doubt that the offenses to be enhanced by the PFO determination were committed during the five-year probationary-period specified in the probation order. The essential element of a PFO conviction provided by KRS 532.080(3)(c)(3) was comfortably inferred. The logical force of that inference, and its ability to sustain a belief beyond reasonable doubt, was not diminished by the Commonwealth's failure to disprove the remote and unlikely circumstance that Shabazz might have been released from probation "by virtue of executive clemency, reversal on appeal, release by way of habeas corpus, or by other means whereby persons serving felony sentences may gain relief." *Id.* at 814.

In short, the jury had readily available the facts it needed to infer "in accordance with reason or sound thinking and within bounds of common sense" and believe beyond a reasonable doubt that Shabazz was still on probation three and half years after he was sentenced to five years' probation. The same is not true in this case.

The simple and straight-forward inference approved in *Shabazz* cannot be so readily drawn here. The 2006 judgment imposing Appellant's two-year sentence is not perfectly analogous to the five-year Order of Probation in *Shabazz*. Given the labyrinthine web of statutes and Corrections Cabinet regulations pertaining to good-time credits, parole eligibility time, shock probation, revocation and reinstatement of probation, and the obvious fact that a prison sentence is more likely to be appealed (thus deferring its finality) than a sentence of probation, we cannot agree with the Commonwealth's assertion that all the jury had to do was apply "ordinary math" or "simple math."

For example, here is explanation from the Commonwealth's brief as to how such an inference might be reasonably drawn:

· Appellant's March 15, 2006, conviction and two-year sentence of imprisonment was entered five years and seven months before the October 24, 2011, offense date in this case. That 2006 conviction credited Appellant with just seventy-seven days of time spent in custody before sentencing. Simple math indicates that Appellant would not have been finally discharged from the 2006 sentence—either after serve-out or discharge from parole—until three years, nine months, and twenty-six days before the offense of manufacturing methamphetamine.

Rather than simplicity, that explanation highlights the puzzling nature of the riddle the jury was asked to solve. Of course, the Commonwealth's argument may be well-taken *if* the reasonable inferences are being drawn from the evidentiary data by prosecutors, defense attorneys, or judges familiar with KRS 532.080 and the machinations of judgments, parole, probation, serve-outs, and final discharges, or other knowledgeable officials within the corrections and the criminal justice system.

However, it is clear to us that a reasonable jury, even a very-well educated jury, could not with any degree of confidence, much less beyond a reasonable doubt, infer "in accordance with reason or sound thinking and within the bounds of common sense without regard to extremes or excess,"[4] and "deduce[ ] as a logical consequence from facts already proven,"[5] that Appellant had "completed service" of the sentence imposed under the prior felony conviction. Indeed, it is manifestly unreasonable to hand over to a jury of reasonable citizens of the community, a series of criminal judgments, a chart of parole eligibility guidelines, and a set of complex statutory-based instructions, and say, in effect: "Here; figure this out for yourselves."[6]

---

4. *Martin*, 13 S.W.3d at 235

5. *Id.*

6. Although the trial court here very appropriately and correctly included in its PFO jury instruction *only* the subsection of KRS 532.080(3)(2) that applied, we have observed that it is not unusual for trial courts instructing juries in PFO cases to simply recite *all five* of the statutory alternatives of KRS 532.080(3)(c) 1–5, even those which cannot conceivably be applicable. As always, the better practice is for the trial court to exercise its discretion and individually tailor the instructions to fit the specific evidentiary parameters of the case, as was done here. The trial court's duty is to instruct upon all theories of the case supported by the evidence, but it is equally the duty of the trial court *not* to instruct the jury on theories that are *not* supported by the evidence. And, focusing even more precisely, it is seldom, if ever, appropriate to clutter the instructions by reciting all of the forms of release mentioned in subsections (1) and (3), ("probation, parole, postincarceration supervision, conditional discharge, [and so on]") because it is always known in advance of the trial which specific form of release is applicable.

The scenario here is all the more troubling because we know that any doubts, confusion, or uncertainty of the jury, and similar concerns about the efficacy of its verdict would have been avoided with one simple question addressed to a probation and parole officer on the witness stand: "Had Arnold Moore completed the service of his 2006 sentence when he committed the offense for which he has just been convicted?" Or, "As of October 24, 2011, had Arnold Moore been discharged from probation, parole, [etc.] arising out of his 2006 felony conviction?" We warned in *Whittle v. Commonwealth:* "Nevertheless, it is worth noting that the Commonwealth needs to provide *some* evidence to support a PFO charge.... So to uphold a conviction, an appellate court must be convinced that the evidence supports a reasonable inference and is not just mere 'guess work.'" 352 S.W.3d 898, 907 (Ky.2011) (citations omitted).

Having more explicitly stated what is expected by way of evidence to prove a PFO charge, we acknowledge in the Commonwealth's defense that our case law has been unclear on that point. In *Shabazz,* a case central to the Commonwealth's argument, we reiterated that our standard does not burden the Commonwealth with "the almost impossible task of proving a negative;" that is, whether a defendant "had been released from probation 'by virtue of executive clemency, reversal on appeal, release by way of habeas corpus, or by other means whereby persons serving felony sentences may gain relief'...." *Id.* (quoting *Davis v. Commonwealth,* 899 S.W.2d 487, 490 (Ky.1995), *overruled on other*

grounds by *Merriweather v. Commonwealth,* 99 S.W.3d 448 (Ky. 2003)).

■■■ Citing to *Shabazz,* the Commonwealth argues that it was Appellant's burden to show, if he could, that he was *not* on probation or parole, or had *not* served out his sentence as of October 24, 2006. As true as it is that our evidence law requires a defendant to carry the burden "where the negative of an issue does not permit [ ] direct proof, or where the facts are more immediately within the knowledge of the defendant," [7] we find no merit in the Commonwealth's repeated assertion that proof of Appellant's current status in relation to his prior conviction is "the negative of an issue." The evidence essential for Appellant's PFO conviction is exactly the opposite of negative. The Commonwealth was required to prove the *positive* of Appellant's status on October 24, 2006. Either he was in the system, *e.g.,* incarcerated, probated, or paroled, or he was not. It is as simple as that. The defendant should not carry the burden on this information because, just as it is not a negative, it is also not information that would necessarily be unique to the defendant. Indeed, for the defendant to obtain proof of such relief, he would tie required to go through the Commonwealth and its associated agencies, and would most likely do so by calling as witnesses—the clerks and corrections officers—that the Commonwealth did not bother to produce. Forcing the defendant to do so improperly shifts the burden of proof, requiring the defendant to prove that he is not PFO-eligible.

---

Only the applicable alternative should be used since there is no evidence to support the others, and doing otherwise creates the possibility of confusion, or worse, the risk of running afoul of the unanimous verdict rules. *See generally Travis v. Commonwealth,* 327 S.W.3d 456 (Ky.2010) (discussing unanimous verdict rules).

7. *Id.* (quoting *Eary v. Commonwealth,* 659 S.W.2d 198, 200 (Ky.1983) (quoting *Duvall v. Commonwealth,* 593 S.W.2d 884, 886 (Ky. App.1979))).

■ The holding of *Shabazz* and *Martin* (that the elements of a PFO charge may be established by reasonable inferences drawn from evidence) reflects nothing more than the generally-applied, fundamental principle that a jury verdict may properly be based upon reasonable inferences drawn from the evidence. "A jury is entitled to draw all reasonable inferences from the evidence[.]" *Toler v. Sud–Chemie, Inc.*, 458 S.W.3d 276, 287 (Ky. 2014), as modified *on denial of reh'g* (*April 7, 2015.*); and *Beatrice Foods Co. v. Chatham*, 371 S.W.2d 17, 19 (Ky.1963) (Findings of the jury will be sustained on appeal "if there was competent and relevant evidence affording a reasonable and logical inference or conclusion of a definite fact.").

■ Our decision today simply reaffirms that fundamental principle with the recognition that, in determining whether the evidence sufficiently supports the inferences to be drawn from it, we assess the reasonableness of the inference— that is: we determine if the inference is "in accordance with reason or sound thinking and within the bounds of common sense without regard to extremes or excess"—from the perspective of reasonable jurors charged with the obligation to evaluate the evidence, not from the perspective of individuals trained in the relevant profession. Trained professionals, relying upon their special expertise and knowledge, may be able to draw sound inferences from evidentiary data which, to the ordinary juror, would involve sheer guesswork, conjecture, or speculation. That, we conclude, is the case here. Moreover, the failure to produce accurate and readily available evidence pertaining to PFO status forces the jurors deciding the issue to rely more heavily upon the arguments of counsel than on the evidence presented. We are satisfied that an ordinary, reasonable juror could not "reasonably infer" from the evidence provided, to the point of proof beyond a reasonable doubt, that at least one of the alternatives of KRS 532.080(3)(c) applied to Appellant. To hold otherwise would require us to modify the meaning of "reasonable inference" as we explained it in *Martin*, and we decline to do so.

As illustrated by this case, the PFO phase of the trial is of substantial and potentially life-changing significance to all parties involved, and to the general public. Given the gravity of its consequences, we would presume that this phase of the trial would be handled with the utmost respect, not as a mere after-thought or postscript of the guilt phase.

The somewhat haphazard presentation of PFO evidence that we occasionally see suggests a less than serious commitment to this vital aspect of criminal trial procedure. It also suggests a disregard for jurors who are left to make the difficult sentencing decision without readily-available and easily-presented evidence. The obviously better practice is to present, in addition to the essential documentary exhibits, knowledgeable witnesses such as court clerks and probation and parole officers, whose testimony would provide the relevant and necessary evidence establishing the elements of the defendant's PFO status. Such witnesses could testify with near-certainty about the relevant dates and about the defendant's status on the relevant dates.

PFO status is typically very easy to prove and is very difficult to seriously challenge. The Commonwealth's burden in a PFO proceeding is both positive and clear: show, beyond a reasonable doubt, the criminal or corrections status of an individual on a certain date in question. We cannot continue to paint that burden as a negative one, much less one impossible to fulfill.

## III. CONCLUSION

For the reasons stated above, we affirm Appellant's conviction with respect to the underlying crimes of manufacturing methamphetamine (first offense) and first-degree possession of a controlled substance, and we affirm the sentences of imprisonment for fifteen years and three years, respectively, imposed for those offenses. We reverse the judgment with respect to the persistent felony offender determination and the enhanced sentence imposed therefor. We further remand this matter to the Lawrence Circuit Court for entry of a new judgment consistent with this opinion.

All sitting. All concur.