RENDERED: APRIL 11, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1312-MR

JOSE MONTOYA VELAZQUEZ                                   APPELLANT

v.                    APPEAL FROM HARDIN CIRCUIT COURT
                      HONORABLE JOHN D. SIMCOE, JUDGE
                      ACTION NO. 22-CR-00260

COMMONWEALTH OF KENTUCKY                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: LAMBERT, McNEILL, AND TAYLOR, JUDGES.

McNEILL, JUDGE: Jose Montoya Velazquez ("Velazquez") appeals from a

Hardin Circuit Court judgment convicting him of three counts of distribution of a

matter portraying a sexual performance by a minor and sentencing him to six

years' imprisonment. Finding no error, we affirm.

## BACKGROUND

On February 8, 2021, FBI Special Agent Joshua Riser was monitoring

a chat group called "No Limit Age" on the social media application, Kik

Messenger. He observed a user by the name of "J.Monty38" post four videos that portrayed child sexual abuse material. Special Agent Riser subpoenaed Kik, requesting the user activity of "J.Monty38." Based on Kik's records, the email associated with the account was jose_montoya03@yahoo.com. The records also showed activity on the J.Monty38 Kik account on January 26, 2021, from the Internet Protocol ("IP") address of 98.17.241.159. That IP address was assigned to Tara Montoya Velazquez, Velazquez's wife.

Law enforcement later interviewed Velazquez who admitted to using Kik on his cell phone and uploading the videos. Velazquez was subsequently charged with four counts of distribution of a matter portraying a sexual performance of a minor. Following a jury trial, Velazquez was convicted on three of the counts and ultimately sentenced to six years in prison. This appeal followed.

## STANDARD OF REVIEW

Because the issues raised on appeal have different standards of review, we set them forth individually below.

## ANALYSIS

### 1. Failure to Strike Jurors for Cause

Velazquez argues the trial court erred in not striking Jurors 235 and 355 for cause. "A trial court's decision on whether to strike a juror for cause is reviewed for abuse of discretion." *Ward v. Commonwealth*, 587 S.W.3d 312, 328

-2-

(Ky. 2019) (citation omitted).  RCr[1] 9.36(1) defines when a trial court should excuse a juror for cause:  "When there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified."

"The party that alleges bias bears the burden of proving that bias and the resulting prejudice, and a trial court must consider the totality of the circumstances when ruling on a motion to strike rather than a response to any one question."  *Finch v. Commonwealth*, 681 S.W.3d 84, 93 (Ky. 2023) (citations omitted).  "Reasonable grounds to excuse a prospective juror exist whenever the juror expresses or shows an inability or unwillingness to act with entire impartiality."  *Rankin v. Commonwealth*, 327 S.W.3d 492, 496 (Ky. 2010).

## A. Juror 235 – Hearing Disability

During voir dire, the trial court questioned Juror 235 about his hearing disability to determine if it affected his ability to serve as a juror.  Juror 235 had been using a court-appointed listening device and expressed concern about its effectiveness.  The following exchange occurred between the Court and Juror 235:

> Trial court:  The bailiff indicated to me that at some point
> during the questioning of the jury that the earbuds that
> you were wearing went out and you were unable to hear,
> is that correct?

---

[1] Kentucky Rules of Criminal Procedure.

-3-

Juror 235: I can hear most of it without them. And I hear better without them. They keep popping off and on.

Trial court: So were you able to hear all of the questions that the attorneys asked?

Juror 235: Well, I think so. I just was uncomfortable, you know, *trying* to hear."

Trial court: Are you concerned that you didn't hear some of their questions?

Juror 235: No. I am really not. I listened very intently. But I expected more from the earbuds.

Trial court: So you believe you have responded [to] and answered any questions that the attorneys or I had during the jury selection process?

Juror 235: For show of hands and that type of stuff, yes. I answered and knew what I was answering.

Trial court: Was there ever a time that you were sure of what question that was asked that you didn't understand or that you didn't hear?

Juror 235: I don't think so.

Defense counsel then asked Juror 235 a series of questions about his ability to hear. In response to whether Juror 235 could hear defense counsel currently, he replied: "As long as you are looking at me and talking to me yes. If you turn your head or if you move too far to one side or the other, no." Following the questioning, Velazquez moved to strike Juror 235 for cause, arguing that if Juror 235 needed to see someone's face to hear them, there was no guarantee he could hear all the

evidence. The trial court denied the motion, finding that Juror 235 stated he could hear with accommodations and that it would make sure he had the accommodations he needed, whether that meant having him sit in a certain spot or using the hearing aids.

Velazquez argues Juror 235 should have been stricken for cause because it is "uncertain if they could hear all of the proof in the case." While conceding that Juror 235's hearing disability is "not a direct indication of impartiality," he claims there is a chance he "may have seen the videos or other documentary evidence in the case without the proper witness testimony explaining each item." Velazquez urges this "uncertainty is grounds reasonable enough to have struck Juror 235."

We would first note that "Rule 9.36(1) is the only standard for determining whether a juror should be stricken for cause." *Sturgeon v. Commonwealth*, 521 S.W.3d 189, 193 (Ky. 2017). The rule concerns only whether a juror can render a fair or impartial verdict. As Velazquez seemingly admits, Juror 235's hearing impairment has nothing to do with bias. RCr 9.36(1) is simply not applicable.

The relevant question is whether Juror 235 could properly perform his duties. *Woodard v. Commonwealth*, 147 S.W.3d 63, 69 (Ky. 2004). Here there is no evidence Juror 235 could not perform his duties reasonably. The trial court and

Velazquez's attorney questioned Juror 235 extensively about his ability to hear the evidence and he repeatedly expressed his belief that he would be able to do so. He had heard all questions asked during voir dire. Further, while sitting on the witness stand, Juror 235 could hear Velazquez's attorney's questions from the jury box, the same distance he would be required to hear from as a juror listening to a witness. He also stated that an attorney asking questions from the lectern would be closer to him than the attorneys asking questions during voir dire, so he believed he would be able to hear the questions asked of witnesses. Put simply, we find no abuse of discretion in the trial court's decision not to strike Juror 235 for cause.

### B. Juror 335 – CSAM Evidence

During a voir dire recess, Juror 335 told a bailiff that he would never look at sexually explicit photos of children. The trial court questioned Juror 335 about his ability to serve as a juror on the case and the following exchange took place:

> Trial court: The bailiff indicated to me that you expressed to her on the way out that you had some concern about the type of evidence that was going to be presented in this case, either photographic or video, is that correct?
>
> . . .
>
> Juror 335: I would never look at that. I thought that I could go through this [the case] . . . I didn't think that it would be right – I want you [the judge] and the people to

-6-

know that I would never look at little children or that kind of stuff, I would never do that.

Trial court: Would the fact that you would not do that inhibit your ability to fairly and impartially hear the facts of this case?

Juror 335: Not [unintelligible] . . . I am like most people, if you look at it more than one time, there is something wrong with you. Now, I want you to know this, I am letting y'all know ahead of time, I think – I hope that I could just be – listen to the evidence, I know I would listen to the evidence and be able to go one way or the other way. I am sure I would do that. But I wanted y'all to know this, I would never do that way, and I think that anybody who looks at that kind of stuff is a pedophile.

Commonwealth: I think everybody would agree that seeing children engaged in sex acts whether with themselves or an adult is upsetting. If that is the evidence in this case, can you look at that evidence and apply the law and make a decision in this case based on the evidence and the law and not just on your emotions?

Juror: I think so, yes.

Defense: You said that if you saw a video of two men having sex you would have a pretty strong reaction to that?

Juror: It would make me want to puke just thinking about it.

Defense: What if the videos were with all children, would you have the same reaction?

Juror: I would never look at that kind of stuff, personally, on my own, I would never look at it. I think that I can listen to the evidence and base my opinion on the evidence itself. Because everybody has a right and

when it comes to it, I can do that – I fought for that. But I wanted you all to know what my feeling was. I wasn't honest with you when you asked that question.

Defense: You said when someone looks at this stuff you automatically label them a pedophile, so it's kind of making a judgment, isn't it?

Juror: Yes, and that is not right.

Defense: So, can you set aside that judgment and . . . be impartial . . . or would what you have seen and the label you have now put on that person . . . affect your ability to remain impartial in the case?

Juror: If it is proven that they are not guilty I can agree with that.

Defense: If who proves they are not guilty?

Juror: The evidence. . . . If the evidence says that they are not guilty, I can accept that.

. . .

The burden is on the prosecution.

Defense: When you see these videos, do you think you can still hold to those values?

Juror: I think so.

. . .

I have never looked at that stuff so I don't know.

. . .

But if the prosecutor [did not] prove their case beyond a shadow of a doubt, I think I could handle that.

-8-

Velazquez then moved to strike Juror 335 for cause, arguing that his answers were equivocal and that if Juror 335 got sick seeing two men having sex, his reaction to the evidence in the case might be so extreme as to poison the jury. The trial court denied the motion, holding that while Juror 335 had strong personal beliefs that he wanted to share, he said he could vote not guilty if the Commonwealth did not prove their case. He did not say that he could not be fair and impartial to the defendant, or that he could not follow the trial court's instructions.

Velazquez argues Juror 335 should have been stricken for cause because there were reasonable grounds to believe he could not render a fair and impartial verdict. He states, "Although Juror 335 said if the Commonwealth did not prove their case he would vote not guilty, their opinion and possible reaction to seeing the CSAM indicated that Juror 335 was making a judgment regarding the case prior to even seeing the evidence."

While Juror 335 did say that "if you look at [CSAM] more than one time there is something wrong with you" and that "anybody who looks at that kind of stuff is a pedophile[,]" "[t]he standard for disqualification under RCr 9.36 does not require a trial court to evaluate a juror's responses out-of-context or in a vacuum." *Lampkins v. Commonwealth*, 701 S.W.3d 99, 116 (Ky. 2024), *reh'g denied* (Sep. 26, 2024) (citation omitted). In context, Juror 335's comments were

not a prejudgment of the case but an attempt to clarify his response to a hypothetical posed by defense counsel during voir dire. Defense counsel asked: "If someone is in a chat room and sees a child porn video does that make them a pedophile? . . . Two days? He isn't just in there one, he's in there two days . . . three days? Pedophile?" Several jurors agreed that if a person stumbles upon CSAM that does not make them a pedophile, but if they go back, that suggests they are. One juror noted that if someone saw it, and then did it again, and again, that's a pattern. Thus, Juror 335's sentiments were not unique, and are likely common to the public. If this were enough to establish reasonable grounds that a juror is biased, it would be hard to seat a jury in a child pornography case.

Further, despite his personal feelings about CSAM, Juror 335 affirmed that he could "listen to the evidence and base my opinion on the evidence itself. Because everybody has a right and when it comes to it, I can do that – I fought for that." As noted by the trial court, while inartful, Juror 335 ultimately said that if the Commonwealth did not prove their case, he could vote not guilty. We cannot say the trial court abused its discretion in not striking Juror 335 for cause.

## 2. Directed Verdict

Finally, Velazquez claims he was entitled to a directed verdict because the Commonwealth failed to prove Velazquez's conduct occurred in

-10-

Hardin County or Kentucky. While Velazquez uses the term venue, it is not clear his argument is really about venue. Venue "is a statutory enactment establishing where a case must be tried." *Derry v. Commonwealth*, 274 S.W.3d 439, 442 (Ky. 2008). KRS[2] 452.510 states "Unless otherwise provided by law, the venue of criminal prosecutions and penal actions is in the *county or city* in which the offense was committed." (Emphasis added.) However, Velazquez argues that KRS 531.340 required the Commonwealth to prove that he uploaded the videos in *Kentucky*.

To the extent Velazquez is arguing that Commonwealth failed to prove venue, *i.e.*, that the offense occurred in Hardin County where the case was tried, he has waived that argument. KRS 452.650 ("The venue of the prosecution may be waived by the defendant and the failure to make a timely motion to transfer the prosecution to the proper county shall be deemed a waiver of the venue of the prosecution."); *Turner v. Commonwealth*, 345 S.W.3d 844, 846-47 (Ky. 2011).

We construe Velazquez's argument to be that the Commonwealth failed to prove he uploaded the videos in Kentucky, which was an element of the offense under KRS 531.340. KRS 531.340 provides in relevant part:

> (1) A person is guilty of distribution of matter portraying a sexual performance by a minor when, having knowledge of its content and character,

---

[2] Kentucky Revised Statutes.

-11-

. . .

(c) *In this state*, he or she:

1. Exhibits for profit or gain;

2. Distributes;

3. Offers to distribute; or

4. Has in his or her possession with intent to distribute, exhibit for profit or gain or offer to distribute, any matter portraying a sexual performance by a minor.

(Emphasis added.) The trial court denied his motion for directed verdict, reasoning "[t]he only IP address associated with . . . this [Kik] account is the IP address that was determined . . . [to be] the address here in Hardin County. . . which leads me to believe, and I think a reasonable juror could believe that that is the only address where this upload could have occurred."

The standard of review for denial of a motion for directed verdict is as follows:

On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true . . . .

On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly

-12-

unreasonable for a jury to find guilt, only then the
defendant is entitled to a directed verdict of acquittal.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991) (citation omitted).

"[T]here must be evidence of substance, and the trial court is expressly authorized

to direct a verdict for the defendant if the prosecution produces no more than a

mere scintilla of evidence." *Id.* at 187-88.

Velazquez argues there was no evidence he was in Kentucky on

February 8, 2021, the day he uploaded the videos. He notes the "Commonwealth's

witnesses both admitted that the IP records did not show activity on February 8,

2021." Velazquez's defense at trial centered on the absence of any records

showing his internet activity on February 8, 2021, the date of the alleged offense.

Considering the evidence as a whole, we cannot say it was clearly

unreasonable for a jury to find that Velazquez uploaded the videos in Kentucky.

"All elements of a crime . . . can be proven by circumstantial evidence."

*Commonwealth v. O'Conner*, 372 S.W.3d 855, 857 (Ky. 2012), *as modified on*

*denial of reh'g* (Aug. 23, 2012) (citations omitted). And "a jury verdict may

properly be based upon reasonable inferences drawn from the evidence." *Moore v.*

*Commonwealth*, 462 S.W.3d 378, 388 (Ky. 2015).

Here, the Kik records showed that Velazquez used the application

from his home in Elizabethtown, Kentucky on January 26, 2021, less than two

weeks prior. Nothing in the record remotely suggested the crime might have

happened outside Kentucky. There was no evidence Velazquez frequently traveled out of state. While it was the Commonwealth's burden to prove Velazquez uploaded the videos in Kentucky beyond a reasonable doubt, on a directed verdict, the evidence must be viewed in the light most favorable to the Commonwealth. It was not clearly unreasonable to believe Velazquez uploaded the videos from his home, or at the least from within his home state. The trial court did not abuse its discretion in denying the motion for a directed verdict.

## CONCLUSION

Based on the foregoing, the judgment of the Hardin Circuit Court is affirmed.


ALL CONCUR.


| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Adam Meyer | Russell Coleman |
| Frankfort, Kentucky | Attorney General of Kentucky |
| | Matthew R. Krygiel |
| | Assistant Attorney General |
| | Frankfort, Kentucky |