RENDERED: OCTOBER 9, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0444-MR

COMMONWEALTH OF
KENTUCKY                                         APPELLANT

              APPEAL FROM FAYETTE CIRCUIT COURT
v.             HONORABLE KIMBERLY N. BUNNELL, JUDGE
                 ACTION NO. 18-CR-00026

BRANDON SENTELL RILEY                         APPELLEE

AND
NO. 2019-CA-0481-MR

BRANDON SENTELL RILEY                         APPELLANT

              APPEAL FROM FAYETTE CIRCUIT COURT
v.             HONORABLE KIMBERLY N. BUNNELL, JUDGE
                 ACTION NO. 18-CR-00026

COMMONWEALTH OF
KENTUCKY                                           APPELLEE

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; DIXON AND JONES, JUDGES.

CLAYTON, CHIEF JUDGE: These appeals are brought from a final judgment and sentence of imprisonment entered by the Fayette Circuit Court after a jury found Brandon Riley guilty of multiple offenses, including two counts of first-degree trafficking in a controlled substance and being a first-degree persistent felony offender. In the first appeal, the Commonwealth argues that the trial court misapplied the terms of Kentucky Revised Statutes (KRS) 533.060(3) in calculating whether Riley's enhanced sentences should run concurrently or consecutively. In the second appeal, Riley argues that the trial court erred in not conducting separate trials for charges that were incurred several days apart. Having reviewed the record and applicable law, we affirm.

**Background Facts**

On October 31, 2017, two Lexington police officers observed a black BMW traveling down Midland Avenue at 22 miles per hour over the speed limit. When they turned on their lights and pursued the car, it sped up and turned into an alley parking lot. Charles Johnson was in the parking lot when the BMW pulled in. He saw the driver throw an object from the window which hit the windshield of

a parked car and burst, sending white powder flying over the windshields of nearby cars and Johnson's van. Alfred Rawls, a FedEx driver who was in the parking lot making a delivery, observed the BMW in the backup camera of his truck. He saw it speed by and had to pull out of the way. The BMW drove through the lot and parked behind an adjacent business. Neither Johnson nor Rawls saw anyone in the car but the driver.

The police had lost sight of the BMW by the time they arrived in the parking lot but were flagged down by Johnson, who described the driver as an African-American man in his thirties or forties wearing a grey hoodie, sweatpants, and white tennis shoes. The police spotted a man wearing a grey sweat suit crossing Vine Street. They followed him on foot and apprehended him. He was breathing heavily and perspiring. When they searched him. they found the key fob to the BMW in his pocket. He told them he owned the car but later said his wife was the owner of the car and he had not been driving it that day. Back at the parking lot, the police collected the baggie containing white powder and the white powder scattered on the windshield of the parked car. Inside the BMW, the police found a digital scale, a white powdery substance, a backpack, and documentation showing that Brandy Becksted, Riley's girlfriend, had purchased the car for $15,000. Riley was arrested on the following charges: first-degree possession of a controlled substance (cocaine); possession of drug paraphernalia; first-degree

-3-

trafficking in a controlled substance (less than four grams); tampering with physical evidence; first-degree fleeing or evading police; and various traffic offenses.

On November 2, 2017, Riley posted bond and was placed on conditional release. Following his formal arraignment on November 6, 2017, he and Becksted returned home and used crack cocaine. Shortly thereafter, the police arrived to execute a search warrant of the residence.

The search warrant was based on a detective's affidavit which stated that a qualified confidential informant (QCI) had advised the police that Riley was selling heroin at a residence on Horsemans Lane in Lexington. The police arranged for the QCI to make two controlled purchases of heroin from Riley. On both occasions, the police observed Riley leave the Horsemans Lane residence in a newer model black BMW and meet the QCI at a gas station to conduct the transaction.

When the police arrived at the Horsemans Lane residence on November 6 to execute the warrant, Becksted panicked and began to look around for contraband, fearing she might be implicated if anything illegal was found because the house was in her name. Upstairs, she found a baggie of white powder, which was later found to contain fentanyl, and a semi-automatic pistol. She placed these items in her purse and ran to a neighbor's house but was intercepted by the

-4-

police.  She agreed to help the police with their investigation to avoid going to jail.  In addition to the gun and the baggie, her purse contained $1,366 mainly in $20 bills, a crack pipe, and a "snort straw."  Becksted told the police that the gun belonged to Riley.

The police searched the residence and found another bag of white powder, which the Kentucky State Police (KSP) laboratory determined was indicative of fentanyl but could not affirmatively identify as such, two sets of digital scales, calibration weights, crack pipes, and snort straws.  The police searched Riley and found $1,465 in cash.  After the arresting officers told him that the gun in Becksted's purse was stolen, Riley claimed everything in the house was his.  He was arrested and charged with the following:  two counts of first-degree trafficking in a controlled substance; possession of a handgun by a convicted felon; receiving stolen property; and possession of drug paraphernalia.

On January 8, 2018, Riley was charged for the events of October 31 and November 6 in one indictment.  For October 31, he was charged with the following:  trafficking in a controlled substance, first degree (fentanyl); fleeing or evading police, first degree (motor vehicle); tampering with physical evidence; possession of drug paraphernalia; operation on a suspended or revoked operator's license; speeding 22 mph over limit; and no or expired registration plates.  For November 6, he was charged with the following:  trafficking in a controlled

substance, first degree (fentanyl); convicted felon in possession of a handgun; receiving stolen property (firearm); and possession of drug paraphernalia. He was also charged with being a persistent felony offender, first degree. All counts of the indictment were tried together.

At trial, a KSP crime lab technician testified that the two quantities of white powder collected on October 31 weighed 15.11 grams and 1.394 grams and both tested positive for fentanyl. The white powder found in Becksted's purse on November 6 weighted 12.8 grams and also contained fentanyl.

In his testimony about the October 31 incident, Riley claimed that there were two other individuals with him in the BMW, one of whom, Chris Snow, was driving. When Snow noticed the police, he parked and the men decided to flee because Snow was wanted for a probation violation and Riley had outstanding warrants for misdemeanors and fines. Riley denied throwing anything from the window of the car and denied ownership of the digital scales and residue found in the car. In his testimony, Alfred Rawls, the FedEx driver, identified Riley as the driver of the BMW and also testified that he saw him walk across East Vine Street.

As to the November 6 incident, Riley claimed that the cash found on his person was proceeds from a car he had recently sold to pay his bond. He denied knowledge of the gun and white powder in Becksted's purse and denied

possessing or selling drugs. He testified that he had struggled with a crack cocaine addiction for the past seven years.

The jury convicted Riley of all the charges except receiving stolen property (firearm) and found him guilty of being a persistent felony offender, first degree (PFO I). The jury used the PFO conviction to enhance the October 31 trafficking sentence from five to ten years, the October 31 tampering sentence from one to ten years, and the November 6 trafficking sentence from five to ten years. The jury recommended that he serve his sentences concurrently for a total of ten years.

In sentencing Riley, the trial court accepted the recommendation of the jury and ordered the October 31 sentences of five years for trafficking enhanced to ten years by the PFO I conviction and one year for tampering enhanced to ten years by the PFO conviction to run concurrently with each other. The original five-year recommended sentence for the November 6 trafficking charge was ordered to run consecutively to the October 31 sentences in accordance with KRS 533.060(3). The trial court ruled that on November 6, Riley was not "awaiting trial" on the PFO charge, and ordered the PFO enhancement to run concurrently with the October 31 charges. The court thereby arrived at a total sentence of fifteen years.

These appeals by the Commonwealth and by Riley followed.  Further facts will be set forth below as necessary.

## Appeal No. 2019-CA-0444-MR

In its appeal, the Commonwealth contests the manner in which the trial court calculated Riley's sentence, specifically, its interpretation and application of KRS 533.060(3), which states:

> When a person commits an offense while awaiting trial for another offense, and is subsequently convicted or enters a plea of guilty to the offense committed while awaiting trial, the sentence imposed for the offense committed while awaiting trial shall not run concurrently with confinement for the offense for which the person is awaiting trial.

The issue is whether the trial court correctly determined that the sentence for the November trafficking charge should be run consecutively but without the PFO enhancement.

Because the trial court's decision involves a question of law and the interpretation of a statute, we review its ruling *de novo*.  *Robinson v. Commonwealth*, 437 S.W.3d 153, 154-55 (Ky. App. 2013).  "[A]ppellate review of a sentencing issue is not waived by the failure to object at the trial court level." *Jones v. Commonwealth*, 382 S.W.3d 22, 27 (Ky. 2011).

The trial court found that the second trafficking charge, for which Riley was arrested on November 6 following the execution of the search warrant,

was committed by him while he was "awaiting trial" on the October 31 charges. The court determined that KRS 533.060(3) requires the later charge to run consecutively to the October 31 trafficking charge. The court further found, however, that Riley was not "awaiting trial" on the PFO I count on November 6, because he was not indicted on that charge until January 8, 2018. Accordingly, it ordered the October 31 sentences for trafficking and tampering, enhanced to ten years each by the PFO I conviction, to run concurrently with each other. The five-year recommended sentence for the November 6 trafficking charge was ordered to run consecutively with these sentences, in accordance with KRS 533.060(3). The PFO enhancement of the November 6 trafficking charge was ordered to run concurrently with the October 31 charges for a total sentence of fifteen years.

The Commonwealth contends that KRS 533.060(3) requires Riley's October and November sentences for trafficking to be run consecutively and both fully enhanced by the PFO I conviction. For purposes of KRS 533.060(3), "persons are considered to be awaiting trial if they have sufficient knowledge of the first offense by means of arrest for that crime or crimes and are released on bond or are otherwise incarcerated for the crimes charged." *Moore v. Commonwealth*, 990 S.W.2d 618, 621 (Ky. 1999). The Commonwealth argues that Riley was "awaiting trial" on the PFO I charge on November 6, even though he had not been formally

charged with the offense, because he would have known he would be charged as a PFO based on his extensive prior criminal history.

In the alternative, the Commonwealth contends that because a PFO charge is an enhancement provision, rather than a separate offense, KRS 533.060(3) does not even apply here. In other words, because the PFO conviction is merely an enhancement of the sentence for the offense committed while awaiting trial for the earlier offense, the enhanced sentence in its entirety must be run consecutively.

It is well established for purposes of double jeopardy that "[c]onviction as a Persistent Felony Offender is not a charge of an independent criminal offense but rather a particular criminal status. . . . Persistent Felony Offender proceedings involve the status of the offender and the length of the punishment, not a separate or independent criminal offense." *White v. Commonwealth*, 770 S.W.2d 222, 224 (Ky. 1989).

But a PFO enhancement does not automatically or implicitly accompany the underlying offense. It appears as a separate charge in an indictment and requires separate proof. In reviewing the case of a criminal defendant whose total sentence of fifteen years was enhanced to fifty years by virtue of his conviction as a PFO I, the Kentucky Supreme Court declared that "[t]his sentencing progression unambiguously illustrates the importance of the PFO

-10-

stage of the trial, and it demonstrates with disquieting clarity why the PFO phase of the trial is not a lesser aspect of the trial proceedings[.]" *Moore v. Commonwealth*, 462 S.W.3d 378, 383 (Ky. 2015). The Court emphasized that the reasonable doubt standard of proof applies to "all elements of a criminal offense, including the enhancement provisions of the PFO statutes[.]" *Id*. at 385.

Thus, when the Commonwealth seeks to enhance a sentence by means of a PFO conviction, it is required to make an independent charge and to present evidence at trial to prove, beyond a reasonable doubt, the specific elements of the PFO offense as defined in KRS 532.080. Furthermore, although Riley may have anticipated he would meet the criteria for such a charge, it was by no means a foregone conclusion that he met the statutory requirements for such a charge. The term "awaiting trial" simply cannot be interpreted so expansively as to include this potential charge.

As to the Commonwealth's contention that the trial court's decision contravenes the legislative intent of the statutory provision "for stricter sentencing for offenses committed while released on bail[,]" *Moore*, 990 S.W.2d at 620, we note that Riley's sentence was lengthened by five years as a result of the trial court's imposition of the statutory provision.

For the foregoing reasons, we hold that the sentence imposed on Riley was in accordance with the terms of KRS 533.060(3).

In his appeal, Riley argues that he was entitled to separate trials on the October 31 and November 6 charges. As noted above, the offenses from both dates were charged together in one indictment on January 8, 2018. At a hearing on May 4, 2018, defense counsel observed that the Commonwealth agreed the charges would have to be tried separately. On June 22, 2018, however, the Commonwealth filed a motion seeking to join all counts for one trial. The motion stated that during pretrial negotiations, the parties had spoken of the charges in terms of two events instead of one indictment and, initially, the trial court had scheduled a trial on the October 31 charges and the PFO charge. The plea negotiations had failed, however, and the Commonwealth sought to join all the counts for one trial on the grounds of judicial economy and because they were connected or constituted a common scheme or plan.

Riley did not file a written response to the Commonwealth's motion and the trial court verbally ruled that the charges would need to be kept together but did not explain its reasoning. On the first day of trial, defense counsel stated that he was renewing his objection to trying the charges together, relying on the same reasons he had raised earlier. We are unable to find where in the record these earlier specific objections were presented. Consequently, we will review Riley's arguments under the palpable error standard of Kentucky Rules of Criminal

-12-

Procedure (RCr) 10.26, as he has requested in the event we should find them to be unpreserved. "Palpable error relief is available under RCr 10.26 only upon a determination that manifest injustice has resulted from the error. Manifest injustice is error [that] so seriously affect[s] the fairness, integrity, or public reputation of the proceeding as to be shocking or jurisprudentially intolerable." *Davidson v. Commonwealth*, 548 S.W.3d 255, 261 (Ky. 2018) (citations and internal quotation marks omitted).

"RCr 6.18 allows for the joinder of offenses in separate counts of an indictment provided that the offenses are of 'the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan.'" *Peacher v. Commonwealth*, 391 S.W.3d 821, 836 (Ky. 2013) (internal quotation marks omitted). On the other hand, RCr 8.31 provides that "[i]f it appears that a defendant or the Commonwealth is or will be prejudiced by a joinder of offenses . . . in an indictment . . . or by joinder for trial, the court shall order separate trials of counts . . . or provide whatever other relief justice requires." RCr 8.31.

To justify a severance of charges, "a defendant must prove that joinder would be so prejudicial as to be unfair or unnecessarily or unreasonably hurtful." *Elam v. Commonwealth*, 500 S.W.3d 818, 822 (Ky. 2016) (quoting *Ratliff v. Commonwealth*, 194 S.W.3d 258, 264 (Ky. 2006)). A trial court's joinder

determination will not be overturned "absent a showing of actual prejudice and a clear abuse of discretion." *Id.* (quoting *Murray v. Commonwealth*, 399 S.W.3d 398, 405 (Ky. 2013)). "This showing of prejudice cannot be based on mere speculation, but must be supported by the record." *Hammond v. Commonwealth*, 366 S.W.3d 425, 429 (Ky. 2012) (citation omitted).

"The primary test for determining whether joinder constitutes undue prejudice is whether evidence necessary to prove each offense would have been admissible [under Kentucky Rules of Evidence (KRE) 404(b)] in a separate trial of the other." *Roark v. Commonwealth*, 90 S.W.3d 24, 28 (Ky. 2002); *see also Doneghy v. Commonwealth*, 410 S.W.3d 95, 105 (Ky. 2013). KRE 404(b)(1) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible . . . [i]f offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" The nexus between the charges is sufficient for joinder if it "does not arise simply from the proximity of the alleged crimes in time and space, although proximity is certainly relevant, but rather from a 'logical' relationship between them, some indication that they arose one from the other or otherwise in the course of a single act or transaction, or that they both arose as parts of a common scheme or plan." *Peacher*, 391 S.W.3d at 837.

Riley argues that such a nexus does not exist between the underlying facts of the October and November charges, with one involving a failed traffic stop, a pursuit by automobile and foot, and a car dusted with contraband, and the other a search pursuant to a warrant based on the work of an informant who purchased drugs from Riley at a gas station. In order to constitute a common scheme or plan, he contends that the evidence from the two events must be similar enough to show a "signature crime" or "modus operandi." *Rearick v. Commonwealth*, 858 S.W.2d 185, 187 (Ky. 1993).

In the context of considering the joinder of charges, however, the offenses need not be sufficiently unique to constitute "signature" crimes or a "modus operandi." The Kentucky Supreme Court has specifically stated that, in the absence of a "common scheme-or-plan nexus," RCr 6.18 also permits "the joinder of offenses of the same or similar character, such as similar rapes . . .; separate burglaries of the same residence and related offenses against the same victim, . . .; or the closely proximate and similarly inflicted abuse and murder of the same child victim." *Peacher*, 391 S.W.3d at 837 (citations omitted).

Riley possessed, on two occasions close in time, a white powder containing fentanyl, and in sufficient amounts to be indicative of trafficking. He also possessed further evidence of trafficking in the form of drug paraphernalia and large amounts of cash. In numerous instances, our appellate courts have approved

-15-

the joinder of trafficking offenses close in time and involving the same controlled substance. One appellant, who was charged with trafficking after he was recorded offering to sell a pound of marijuana, argued the trial court erred in admitting testimony that he sold a pound of marijuana to an undercover policeman approximately four months after he was indicted. *Howard v. Commonwealth*, 787 S.W.2d 264, 266 (Ky. App. 1989). This Court held that the evidence was admissible because the appellant was on trial for trafficking in marijuana and proof of another sale four months later was evidence of a plan, scheme, or system because it was a "crime similar to, clearly connected with, and not too remote from the one charged." *Id*.

In another case, the Kentucky Supreme Court approved the joinder of charges involving numerous sales of cocaine over a period of seven months, stating, "Despite the fact that the acts leading to the charges occurred over several months, they were not too remote from each other to prevent joinder." *Peyton v. Commonwealth*, 253 S.W.3d 504, 514 (Ky. 2008). In light of this clear precedent, the trial of Riley's charges together cannot constitute palpable error.

Riley next argues that the joinder of the charges was unduly prejudicial because it allowed the Commonwealth to skirt its burden of proving each element of the offenses beyond a reasonable doubt and constituted improper bolstering. He also contends that Becksted's testimony was damaging because it

revealed she and Riley's drug use, and his complicated relationship with her and their children. He claims that the jury's recommendation of minimum sentences for the felony charges and PFO enhancement signals they were not "totally sold" on the case. Riley's contentions are largely speculative and do not convince us that trying the charges together was a palpable error leading to manifest injustice. *Sluss v. Commonwealth*, 450 S.W.3d 279, 283 (Ky. 2014), *overruled on other grounds by Floyd v. Neal*, 590 S.W.3d 245 (Ky. 2019).

## Conclusion

Because the trial court did not err in its interpretation and application of KRS 533.060(3) to Riley's sentences and in not severing the charges for trial, its final judgment and sentence of imprisonment is affirmed.


ALL CONCUR.

BRIEFS FOR
APPELLANT/APPELLEE
COMMONWEALTH OF
KENTUCKY:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky

BRIEFS FOR
APPELLEE/APPELLANT
BRANDON SENTELL RILEY:

Adam Meyer
Assistant Public Advocate
Frankfort, Kentucky